PER CURIAM.
Numerous members of the Florida Bar have petitioned this Court to amend the Rules Regulating the Florida Bar and change the apportionment of the seats on the bar’s board of governors. The board of governors has responded with an alternative proposal for reapportioning the board. We have jurisdiction pursuant to rule 1-12.-1.
The board currently has forty-two members: the president and president-elect of the Florida Bar; the president and president-elect of the Young Lawyers Division (YLD); two bar members who reside outside Florida; two nonlawyers; one bar member from each of the state’s twenty judicial circuits; and fourteen additional bar members apportioned among the circuits based on the number of bar members residing in each circuit. The petitioners’ proposal would retain the bar’s president and president-elect, the two nonresident bar members, and the two nonlawyers and would have between thirty and forty resident bar members elected from single-member districts created by the board of governors. The proposal eliminates the two YLD representatives and requires that the thirty to forty resident bar members be elected according to the one person, one vote principle. Two out-of-state bar members argue that there should be more nonresident bar members on the board, but otherwise support the petitioners’ proposal as to one person, one vote and abolishing the YLD seats. An individual member of the bar endorses the petitioners’ proposal, but argues for a “free choice” reapportionment plan which would allocate board seats on a special interest basis.
*252 In opposition to the petitioners’ proposal the board of governors adopted an alternative plan for reapportioning the board. The board’s proposal keeps the two bar officers, the two YLD representatives, the two nonlawyers, and the twenty circuit representatives, adds a third nonresident bar member, and, using a median circuit bar member population, apportions the remaining seats on the board (for a total board membership of up to fifty) among the circuits based on the median number of resident bar members per circuit. The board argues that the one person, one vote principle is not applicable to the bar, that the YLD representatives should be retained, and that there should continue to be at least one board member from each judicial circuit. The YLD supports the board’s proposal. An individual bar member, who agrees with most of the board’s proposal, has submitted an alternative method of allocating board seats based on the average, rather than the median, number of bar members per circuit.
The main issue presented here is whether the one person, one vote principle applies to board of governors’ elections. In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362,12 L.Ed.2d 506 (1964), the United States Supreme Court held that state legislatures must be apportioned according to the principle of one person, one vote. Since Reynolds, the Court has found that standard applicable to other elective bodies that perform vital and traditional governmental functions and whose actions affect all the general public within those bodies’ jurisdiction. E.g., Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (trustees of junior college district); Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed. 2d 583 (1969) (school district officials); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) (county commissioners). If an elective body’s powers are limited and disproportionately affect members of a particular group, however, the Court has found the one person, one vote principle inapplicable. E.g., Ball v. James, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981) (directors of agricultural improvement district); Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed. 2d 659 (1973) (water storage district directors).
The Florida Bar currently has approximately 40,000 members; their interests and concerns are diverse. The board of governors looks after those interests and addresses those concerns on a collective basis, working for the good of the profession as a whole. The board should be apportioned fairly and should represent all of the bar’s members. We do not find, however, that strict apportionment of board seats according to the principle of one person, one vote is required.
The petitioners argue that lawyers control the administration of justice in Florida, and, because it controls lawyers, the board exercises powers traditionally undertaken by state government. The board exercises the powers and performs the duties assigned to it by this Court. Some of those powers and duties are broad, and the board has considerable influence on the legal profession. It does not, however, exercise governmental powers as, for instance, a legislature does.
The bar, as governed by the board, is composed of lawyers and exists to inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence. Although our profession deals with the general population, and that population is affected by the actions of lawyers, the board of governors has little to do with the general public and is not responsible to the population as a whole in the way that a government usually is. Rather, its powers and duties are limited and directly affect members of a particular group, i.e., persons licensed to practice law in this state.
When it integrated the state bar, this Court noted that integration resulted from the need for an organization that would speak for the profession as a whole and described the integrated bar as a necessary union “to secure the composite judgment of the bar on questions involving its duty to *253 the profession and the public.” Florida State Bar Association, 40 So.2d 902, 908 (Fla.1949). Moreover, the Court stated that integration was not “intended as a means to aid groups and cliques in the exercise of arbitrary power or to enforce their will on others.” Id. The first paragraph of article III of the original integration rule, therefore, provided for the following board members: the president and president-elect of the bar, the president of the junior bar section (the YLD’s predecessor), one bar member from each judicial circuit, and an unspecified number of board members from circuits with more than 300 bar members up to a limit of three representatives from any one circuit. Presumably, the original apportionment plan implemented the Court’s stated aims of gaining the bar’s composite judgment and preventing its being run by a clique.
Those aims are still valid, and we find that the board’s proposal, rather than the petitioners’, more nearly carries out those aims.* The state’s judicial system is based on the circuits. Circuit representatives, therefore, can keep the board abreast of the needs, problems, and characteristics that are unique to their circuits. Additionally, the representatives of the smaller, usually rural circuits, may bring a point of view to the board that is absent in larger urban circuits. In sum it appears that the board will be more representative of all the bar’s members if the principle of one person, one vote is not employed.
The same is true for young lawyers’ representation on the board. Approximately half of the state’s bar members are also members of the YLD by virtue of their being less than thirty-six years old or their having been licensed to practice law in any jurisdiction for less than five years. The petitioners argue that allowing the YLD representatives on the board while YLD members can vote for circuit representatives gives disproportionate weight to YLD members’ votes. The YLD responds that, due to the realities of practicing law, generally only older, more established members of the profession have the time and resources to run for and serve on the board of governors. According to the YLD, therefore, removing the YLD representatives from the board would virtually disenfranchise the YLD members because no board member would be directly concerned with their interests.
We do not believe that the interests of older bar members are antithetical to those of younger members; as bar members they must have many areas of concern in common. The presence of YLD representatives on the board, however, might well allow the introduction of a different point of view, a valuable consideration for a group that acts for the bar as a whole. Because the president-elect succeeds the president in YLD, each of these YLD officeholders serves two years on the board, thereby increasing their familiarity with the board’s work and their effectiveness on the board. We agree to the board’s proposed retention of both the YLD president and president-elect. We do not find that both YLD officers need to be voting board members, however, and amend the proposal to give one vote to the two YLD members, to be exercised by the YLD president or by the YLD president-elect in the president’s absence.
There are no objections to the board’s proposal that a third out-of-state representative be added. Therefore, we hereby allow for three (rather than the current two) nonresident board seats.
The board’s proposal caps the total number of seats at fifty as the maximum number at which the board can operate effectively. To maximize the number of board seats assigned on a population of bar members basis, however, we increase that number to fifty-one, only fifty of whom will be voting members. The board, therefore, shall consist of the bar’s president and president-elect, two YLD members, three nonresident bar members, two nonlawyers, one representative from each of the twenty *254 judicial circuits, and twenty-two members apportioned among the circuits on the basis of the number of bar members residing in each circuit. As in the current apportionment plan, this amendment insures that each circuit will have at least one representative while other circuits will have many more than one. Instead of the current fourteen extra representatives, however, there will now be twenty-two board seats assigned among the circuits on a population of bar members basis. We trust this will provide more representation for the circuits with the largest numbers of bar members while still allowing the fairest representation of bar members across the state and beyond.
Rules 1-4.1 and 2-3.3, as amended herein, are attached following this opinion. These amendments will be effective at 12:01 a.m., January 1, 1988.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion.
Rule 1-4.1 is amended as follows:
1-4.1. Composition of board of governors. The board of governors shall be the governing body of the Florida Bar. It shall have fifty-one (51) members, fifty (50) of whom shall be voting members, and shall consist of the president and the president-elect of the Florida Bar, president and president-elect (who shall vote only in the absence of the president) of the Young Lawyers Division, two (2) three (3) representatives of the active members of the Florida Bar residing outside of the State of Florida, representatives elected by and from the active members of the Florida Bar in each judicial circuit, and two (2) residents of the State of Florida who are not members of the Florida Bar. There shall be one or more such circuit representatives from each judicial circuit and fourteen (14) additional-circuit representatives who shall be apportioned among and elected from the judicial circuits on the basis of the number of members in good standing residing in each circuit. The formula for determining the number of additional circuit representatives apportioned to and elected from each judicial circuit and all other matters concerning election and term of office for members of the board of governors shall be prescribed in chapter 2.
Rule 2-3.3 is amended as follows:
2-3.3. Formula for apportionment of members of board of governors. The formula for determining the number of representatives apportioned to and elected from each judicial circuit shall be as follows:
(a) Determine the average median number of members in good standing residing in each the judicial circuits (“the median circuit population”) by dividing-the number of Florida resident members in-good-standing by the total number of judicial-circuits and then divide the-members-in-good-standing residing-in-eadh- circuit by such aver-ager (1) ranking the judicial circuits in order of the number of members in good standing residing in each circuit and (2) determining the number of members in good standing residing in the judicial circuit that is ranked exactly midway between the circuit with the largest number of members and the circuit with the smallest number of members or, if there is an even number of circuits, calculating the average membership of the two (2) circuits that are ranked midway between the circuit with the largest number of members and the circuit with the smallest number of members.
(b) Apportionment — of representatives among the judicial circuits shall be in accordance with the results-thus obtained by apportioning assigning to each judicial circuit one representative -for each multiple of one-(including one) of the results-obtained for such circuit, provided-such number does not-exceed fourteen (14), and-one-representative-for — the circuit’s remaining fraction of a-multiple commencing with the largest-such fraction and continuing-in-descending order to the next largest fraction and-so-on--until all representatives of this category -shall be apportioned to judicial circuits the number of representatives *255 equal to the quotient obtained by dividing the number of members in good standing residing in that circuit by the median circuit population and rounding to the nearest whole number.
(c) Determine the relative deviation of each circuit’s proportionate representation from the median circuit population by (1) calculating the number of resident members per representative so apportioned, rounded to the nearest whole number, (2) subtracting from that number the median circuit population, (3) dividing the difference by the median circuit population, and (4) converting the quotient so obtained to the equivalent percentile.
(d) Determine whether each circuit’s relative deviation from the median circuit population would be reduced by adding or subtracting one representative, and, if so, add or subtract one representative as indicated.
(e) Assign one representative to each judicial circuit not otherwise qualifying for a representative under the calculations made in subparagraphs (a) and (b).
(f) In the.event the sum of the whole integers-so determined exceeds fourteen (14),-the -circuits whose results show whole integer-s-from the application of the formula shall be determined by eliminating-one representative for the lowest fraction of a whole integer among-sueh-circuits and continuing — in ascending order until fourteen (14) is reached. If the total number of representatives assigned to the judicial circuits as a result of the steps set forth in subparagraphs (a) through (e), when added to the number of officers and other representatives who are members of the board by virtue of the provisions of rule 1-4.1, would result in a board of more than fifty (50) voting persons, reduce the number of members of the board to exactly fifty (50) voting persons by (1) determining which judicial circuit among those to which more than one representative has been apportioned would have the smallest relative deviation from the median circuit population after the loss of one representative, (2) subtracting one representative from that circuit, and (3) repeating those two (2) steps as necessary until the total number of voting board members is reduced to exactly fifty (50).

In fact the petitioners’ plan could well contravene the Court’s aims completely by concentrating all or virtually all the board members in a few geographical locations that have large numbers of resident bar members, leaving other areas unrepresented.