PER CURIAM.
The Florida Bar, as part of its annual review and with the authorization of the Board of Governors, petitions this Court to amend the Rules Regulating the Florida Bar *116 and to adopt new rules.[1] Several members of the Bar and one private organization either support or oppose parts of the Bar’s petition. We have jurisdiction. Art. V, § 15, Fla. Const.
The specific Rules Regulating the Florida Bar that the Bar has petitioned to create or amend include: rule 1-3.2 (Membership Classifications); rule 1-3.8 (Right to Inventory); rule 1-4.1 (Composition of Board of Governors); rule 1-7.3 (Dues); bylaw 2-3.3 (Formula for Apportionment of Members of the Board of Governors); bylaw 2-3.5 (Nomination of Members); bylaw 2-7.3 (Creation of Sections and Divisions); rule 3-5.1 (Rules of Discipline; Generally);[2] rule 3-7.6 (Procedures Before a Referee); rule 3-7.10 (Reinstatement and Readmissions Procedures); rule 3-7.11 (General Rule of Procedure); rule 3-7.12 (Disciplinary Resignation from the Florida Bar); rule 3-7.13(Placement on Inactive List for Incapacity Not Related to Misconduct); rule 4-5.1 (Responsibilities of a Partner or Supervisory Lawyer);[3] rule 4-5.6 (Restrictions on Right to Practice); rule 4-7.6 (Communications of Fields of Practice); rule 5-1.2 (Trust Accounting Records and Procedures); rule 6-10.3 (Minimum Continuing Legal Education Standards);[4] Subchap-ter 6-20 (Standards for Certification of a Board Certified Elder Law Attorney);[5] rule 10-3.1 (Unlicensed Practice of Law (UPL); Generally); rule 10-3.3 (Appointment of Staff Counsel and Bar Counsel); rule 10-4.1 (UPL Circuit Committees; Generally); rule 10-5.1 (UPL Complaint Processing); rule 10-6.1 (UPL Hearings); rule 10-6.2 (UPL Subpoenas); rule 10-7.2 (Proceedings for Indirect Criminal Contempt); rule 10-8.1 (UPL Files); rule 18-1.4 (Military Legal Assistance Counsel Rule; Supervision and Limitations); rule 18-1.5 (Certification); rule 18-1.6 (Withdrawal or Termination of Certification); and rule 18.1.7 (Discipline).
Except as noted, we approve the Bar’s proposals. Some of the amendments proposed by the Bar involve only technical modifications, and others are self-explanatory. However, we find that the following rule amendments merit discussion.
Rule 1-lf.l — Composition of Board of Governors
We approve the proposed amendment of this rule which adds one additional non-resident seat to the Board of Governors.[6] However, for several reasons, this amendment merits discussion. At the outset, we agree with the Bar that it complied with notice requirements under a literal interpretation of rule 1-12.1(g).[7] Further, since the represen *117 tative of the Florida Chapter of the National Bar Association (FCNBA) attended the January and March 1996 Board meetings, where the issue was addressed, FCNBA was aware that the issue had not been decided and almost certainly would be continued until the next Board meeting in May.[8] We also note that, as the Bar’s chronology details, this issue has been debated, studied, and publicized since September 1995. Therefore, we conclude that although FCNBA’s arguments have some merit, interested Bar members and FCNBA had reasonable notice of the Board’s consideration of the proposed amendments.
On the merits, the principle of proportional representation militates in favor of the addition of a fourth non-resident seat on the Board of Governors considering the present structure of the Board.[9] Since there are over 10,000 outof-state practitioners represented by only three Board members, the Bar advances a reasonable argument that a fourth non-resident seat is warranted. At present, there is approximately one Board seat for every 1000 in-state Bar members, as compared to one Board seat for approximately every 3500 out-of-state members. Florida Bar’s Response to Commentary of Respondent at 9. When a third non-resident seat was approved by this Court in 1987, we noted that:
The Florida Bar currently has approximately 40,000 members; their interests and concerns are diverse. The board of governors looks after those interests and addresses those concerns on a collective basis, working for the good of the profession as a whole. The board should be apportioned fairly and should represent all of the bar’s members.
The Florida Bar Re Amendments To the Rules Regulating The Florida Bar Reapportionment, 518 So.2d 251, 252 (Fla.1987) (emphasis added). Obviously, both the Bar’s membership as a whole and that of the out-of-state practitioners in particular have grown considerably in the interim. Recognizing that the group now comprises almost 20% of the Bar’s membership but only holds approximately 6% (or 3 of 51) of the Board seats, a fourth Board seat would mean the non-residents occupy approximately 7.5% of the Board seats. We conclude that this is a reasonable request which still leaves the out-of-state practitioners proportionally underrepresented but certainly improves their numbers. For that reason, we approve this amendment.
Rule 3-5.1 — Rules of Discipline; Generally
Proposed subdivision (k) consolidates the amounts and types of costs that may be assessed in disciplinary proceedings, now separately set forth in rules 3-7.6(k)(l)(E); 3-7.6(o); and 3-7.10(o), as well as providing that costs may be imposed as part of a disciplinary action. We disapprove this requested addition. We find the present system adequate whereby the referee has the discretion of assessing costs against either the Bar or the respondent and can see no persuasive reason to revise the process.
Rule 3-7.6 — Procedures Before a Referee
The proposed amendment of this rule deletes language regarding assessable costs in subdivision (o) that would be moved to new subdivision (k) of rule 3-5.1. Per our disap *118 proval of proposed rule 3-5.1(k), this amendment is likewise disapproved.
Rule 3-7.10 — Reinstatement and Readmissions Procedures
The proposed amendment of this rule revises the filing requirements for a reinstatement petition in subdivision (e)(1) from an original and three copies to an original and one copy; presents a summary or expedited procedure in subdivision (h) for handling uncontested reinstatement proceedings; and deletes language regarding assessable costs in subdivision (o) that would be moved to proposed subdivision (k) of rule 3-5.1. With one exception, we approve the proposed revisions to this rule. Consistent with our rejection of the proposed amendments to rules 3-5.1 and 3-7.6, we disapprove the deletion of language in subdivision (o) regarding assessable costs.
Rule 3-7.11 — General Rules of Procedure
Proposed subdivision (d)(3) allows the Bar’s executive director to issue a subpoena for production or testimony by a person domiciled or found within Florida when requested to do so based on a subpoena properly issued by a lawyer disciplinary body in a foreign jurisdiction; proposed subdivision (d)(4) authorizes the issuance of subpoenas by the chair or vice-chair of the grievance committee to which a matter may be assigned and allows service of process by Bar investigators or other lawful process after a probable cause finding by a grievance committee but before a referee has been appointed; and the proposed amendment deletes obsolete references in subdivision (i)(l)(A) to the Florida Designation Plan, former sub-chapter 6-2, which sunsetted on June 20, 1996. While we approve the amendment and new subdivisions, we strongly caution the Bar against abusing these enhanced investigative powers.
Bar member John Weiss expressed concern that the “overall effect” of the investigative subpoena power gives the Bar an unneeded “leg up” on respondent attorneys, placing them at a structural disadvantage in disciplinary proceedings. Although our approval of the Bar’s proposal is not intended to accomplish any such purpose, we fully expect the Bar to not use its enhanced powers to that end. The Bar maintains that these new provisions will allow it to better screen prospective complaints, ensure the accuracy thereof, and save time and money by filtering out unsubstantiated allegations. We agree that if used properly, the new authority will give the Bar greater facility to screen non-meritorious complaints and pursue only those worthy of further scrutiny. In that sense, the subpoena power should expedite the process, saving time and money, and actually benefit respondent attorneys by discrediting or substantiating misconduct allegations more efficiently. However, to reiterate, we expect the Bar to use this authority only in the manner represented by the Bar and intended in the rules.
Accordingly, except as noted above, the rules are amended and adopted as reflected in the appendix to this opinion. The new language is indicated by underscoring; deletions are signified by strike-through type. Board comments are included for explanation and guidance only and are not adopted as an official part of the rules. These amendments and adoptions take effect upon the release of this opinion.[10] The filing of a motion for rehearing shall not modify the effective date of the rules.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
APPENDIX
RULE 1-3.2 MEMBERSHIP CLASSIFICATIONS
(a) Members in Good Standing. Members of The Florida Bar in good standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current *119 year and who are not retired, resigned, delinquent, inactive, or suspended members. A practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business upon such conditions as the court deems appropriate under the circumstances of the case.
(b) Conditionally Admitted Members. The Supreme Court of Florida may admit a person with a prior history of drug, alcohol, or psychological problems to membership in The Florida Bar and impose conditions of probation as the court deems appropriate upon that member. The period of probation shall be no longer than 3 years, or for such indefinite period of time as the court may deem appropriate by conditions in its order. The conditions may include, but not be limited to, participation in a rehabilitation program, periodic blood and urine analysis, periodic psychological examinations, or supervision by another member of The Florida Bar. The probation shall be monitored by The Florida Bar and the costs thereof shall be paid by the member on probation. A failure to observe the conditions of probation or a finding of probable cause as to conduct of the member committed during the period of probation may terminate the probation and subject the member to all available grievance procedures under the Rules of Discipline.
(c) Inactive Members. Inactive members of The Florida Bar shall mean only those members who have properly elected to be classified as inactive in the manner elsewhere provided.
Inactive members shall:
(1) pay annual dues as set forth in rule 1-7.3;
(2) be exempt from continuing legal education requirements;
(3) affirmatively represent their membership status as inactive members of The Florida Bar when any statement of Florida Bar membership is made;
(4) not hold themselves out as being able to practice law in Florida or render advice on matters of Florida law;
(5) not hold any position that requires the person to be a licensed Florida attorney;
(6) not be eligible for designation or certification under the Florida designation or certification plans;
(7) not vote in Florida Bar elections or be counted for purposes of apportionment of the board of governors;
(8) certify upon election of inactive status that they will comply with all applicable restrictions and limitations imposed on inactive members of The Florida Bar.
Failure of an inactive member to comply with all requirements thereof shall be cause for disciplinary action.
An inactive member may, at any time, apply for reinstatement to membership in good standing in the manner provided in rule 1-3.7.
RULE 1-3.8 RIGHT TO INVENTORY
(a) Appointment; Grounds; Authority. Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons a practice, disappears, or dies, and no partner, personal representative, or other responsible party capable of conducting the attorney’s affairs is known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney (hereinafter referred to as “the subject attorney”) and to take such action as seems indicated to protect the interests of clients of the subject attorney, as well as the interest of that attorney.
(b) Maintenance of Attorney-Client Confidences. Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court that appointed the attorney to make the inventory.
(c) Status and Purpose of Inventory Attorney. Nothing herein creates an attorney and client, fiduciary, or other relation *120 ship between the inventory attorney and the subject attorney. The purpose of appointing an inventory attorney is to avoid prejudice to clients of the subject attorney and, as a secondary result, prevent or reduce claims against the subject attorney for such prejudice as may otherwise occur.
1-4. BOARD OF GOVERNORS
RULE 1-4.1 COMPOSITION OF BOARD OF GOVERNORS
The board of governors shall be the governing body of The Florida Bar. It shall have 51 52 members, SO 51 of whom shall be voting members, and shall consist of the president and the president-elect of The Florida Bar, president and president-elect (who shall vote only in the absence of the president) of the young lawyers division, 0 4 representatives of the members of The Florida Bar in good standing residing outside of the state of Florida, representatives elected by and from the members of The Florida Bar in good standing in each judicial circuit, and 2 residents of the state of Florida who are not members of The Florida Bar. There shall be 1 or more such circuit representatives from each judicial circuit who shall be apportioned among and elected from the judicial circuits on the basis of the number of members in good standing residing in each circuit. The formula for determining the number of additional circuit representatives apportioned to and elected from each judicial circuit and all other matters concerning election and term of office for members of the board of governors shall be prescribed in chapter 2.
RULE 1-7.3 DUES
(a)Dues Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred, or been placed on- the classified as inactive members list pursuant to rule 3-7.13, shall pay annual dues to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the dues at more than $190 per annum. At the time of the payment of dues every member of The Florida Bar shall file with the executive director a statement setting forth, any information that may be required by the board of governors.
Dues tendered to The Florida Bar shall not be accepted from any member who is delinquent in the payment of costs or restitution imposed against the member in a disciplinary proceeding. Costs shall be deemed delinquent unless paid within 30 days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown. Restitution shall be deemed delinquent unless accomplished in the manner and by the date provided in the disciplinary order or agreement.
[No changes to remainder of rule 1-7.3.]
BYLAW 2-3.3 FORMULA FOR APPORTIONMENT OF MEMBERS OF BOARD OF GOVERNORS
The formula for determining the number of representatives apportioned to and elected from each judicial circuit shall be as follows:
(a) Determination of Median Circuit Population. Determine the median number of members in good standing residing in the judicial circuits (“the median circuit population”) by ranking the judicial circuits in order of the number of members in good standing residing in each circuit and determining the number of members in good standing residing in the judicial circuit that is ranked exactly midway between the circuit with the largest number of members and the circuit with the smallest number of members or, if there is an even number of circuits, calculating the average membership of the 2 circuits that are ranked midway between the circuit with the largest number of members and the circuit with the smallest number of members.
(b) Apportionment of Members Among the Judicial Circuits. Apportion representatives among the judicial circuits by assigning to each judicial circuit the number of representatives equal to the quotient obtained by dividing the number of members in good standing residing in that circuit by the median circuit population and rounding to the nearest whole number.
(c) Determination of Deviation From Median Circuit Population. Determine the *121 relative deviation of each circuit’s proportionate representation from the median circuit population by (1) calculating the number of resident members per representative so apportioned, rounded to the nearest whole number, (2) subtracting from that number the median circuit population, (3) dividing the difference by the median circuit population, and (4) converting the quotient so obtained to the equivalent percentile.
(d) Adjustment to Deviation From Median Circuit Population. Determine whether each circuit’s relative deviation from the median circuit population would be reduced by adding or subtracting 1 representative, and, if so, add or subtract 1 representative as indicated.
(e) Minimum Guaranteed Representatives. Assign 1 representative to each judicial circuit not otherwise qualifying for a representative under the calculations made in subdivisions (a) and (b).
(f) Reduction in Number of Representatives to Maintain Maximum Board Size. If
the total number of representatives assigned to the judicial circuits as a result of the steps set forth in subdivisions (a) through (e), when added to the number of officers and other representatives who are members of the board by virtue of the provisions of rule 1-4.1, would result in a board of more than 50 51 voting persons, reduce the number of members of the board to exactly §6 51 voting persons by (1) determining which judicial circuit among those to which more than 1 representative has been apportioned would have the smallest relative deviation from the median circuit population after the loss of 1 representative, (2) subtracting 1 representative from that circuit, and (3) repeating those 2 steps as necessary until the total number of voting board members is reduced to exactly 50 51.
BYLAW 2-3.5 NOMINATION OF MEMBERS
(a) Staggered Terms. Elections shall be held and appointments made in even-numbered years for the following board of governors’ representatives:
Circuit (seat #)
1
2(2)
3
4(1)
6(1)
7
9(1)
9(3)
10
11(1)
11(3)
11(5)
11(7)
11(9)
13(1)
14
15(1)
15(3)
17(1)
17(4)
18
20
nonresident (2)

nonresident U)

public member (2)
Elections shall be held and appointments made in odd-numbered years for the following board of governors’ representatives:
Circuit (seat #)
2(1)
4(2)
5
6(2)
8
9(2)
11(2)
11(4)
11(6)
11(8)
11(10)
12(1)
13(2)
13(3)
15(2)
16
*122 17(2)
17(3)
17(5)
19
nonresident (1)
nonresident (3)
public member (1)
As additions or deletions of circuit representatives resulting from the application of the formula provided in this rule necessitate changes in the lists set forth above, both in circuit and office numbers, such changes shall be made by the executive director as appropriate and shall be published in The Florida Bar News on or before November 1.
(b)Time for Filing Nominating Petitions. Nominations for the election of representatives on the board of governors from each judicial circuit shall be made by written petition signed by not fewer than 5 members of The Florida Bar in good standing. In each circuit in which there is more than 1 representative to be elected, the offices of the representatives shall be designated numerically, with the executive director making whatever adjustments are necessary to reflect changes resulting from the annual certification, and a nominating petition shall state the number of the office sought by a nominee. Any number of candidates may be nominated on a single petition, and any number of petitions may be filed, but all candidates named in a petition and all members signing such petition shall have their official bar address in the judicial circuit that the candidate is nominated to represent and shall be members of The Florida Bar in good standing. Nominations for election of a nonresident member of the board of governors shall be by written petition signed by not fewer than 5 nonresident members of The Florida Bar in good standing. Nominees shall endorse their written acceptance on such petitions but no nominee shall accept nomination for more than 1 office. All nominating petitions shall be filed with the executive director at the headquarters office on or before 5:00 p.m., December 15 prior to the year of election. Filing by facsimile is permitted but shall occur only when transmission is complete. On a date to be fixed by the executive director the nominating petitions shall be canvassed and tabulated by the executive director who shall thereupon certify in writing the names of all members who have been properly nominated and file such certificate with the clerk of the Supreme Court of Florida.
(c)Nomination and Appointment of Nonlawyer Members. The board of governors’ members who are not members of The Florida Bar shall be chosen and appointed by the Supreme Court of Florida from the list of nominees to be filed with the court by the board of governors. The board of governors of The Florida Bar by majority vote shall nominate 3 persons for each nonlawyer seat and shall file the nominations with the Supreme Court of Florida on or before April 15 of the appointment year for that seat. The 2 nonlawyer members shall serve staggered terms of 2 years and shall serve no more than 2 terms.
BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable. The following sections of The Florida Bar have been created by the board of governors:
(a) Administrative Law Section;
(b) Appellate Practice and Advocacy Section;
(c) Business Law Section;
(d) City, County and Local Government Law Section;
(e) Criminal Law Section;
(f) Elder Law Section;
(g) Entertainment, Arts, and Sports Law Section;
(h) Environmental and Land Use Law Section;
(i) Family Law Section;
(j) General Practice, Solo and Small Firm Section;
(k) Government Lawyer Section;
(l) Health Law Section;
(m) International Law Section;
*123 (n) Labor and Employment Law Section;
(o) Practice Management and Development Section;
(p) Public Interest Law Section;
(q) Real Property, Probate, and Trust Law Section;
(r) Tax Section;
(s) Trial Lawyers Section; and
(t) Workers’ Compensation Section.
The following divisions of The Florida Bar have been created by the board of governors:
(a) Out-of-State Practitioners Division; and
(b) Young Lawyers Division.
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Readmission. A former member who has been disbarred or whose petition for disciplinary resignation has been accepted, pursuant to rule 3-7.12, may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order.
(b) Reinstatement. An attorney who has been suspended may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of dues.
(c) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 3 1-copies copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on The Florida Bar in Tallahassee.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for in rule 3-7.10(n)(l) and (2). The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings.
(d) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings, as provided in rule 3-7.10(o).
(e) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary proceedings have been paid and restitution has been made.
(f) Attorney for the Bar. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of, governors, may appoint, from the members in good standing of The Florida Bar designated by the staff counsel to serve as bar counsel, one or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(g) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent- practical, as proceedings are conducted under the rule concerning trials. The matter to decide shall be the fitness of the petitioner to resume the practice of law.
(h) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice there *124 of shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.

(Jp) Summary Procedure. If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.

(i) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. Such report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff counsel and a copy of the report only on all other parties. Staff counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(j) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(k) Judgment. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate the petitioner in The Florida Bar; provided, however, that the judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct that led to the petitioner’s suspension of membership in The Florida Bar; and further provided, however, if suspension of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension.
(l) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.
(m) Readmission After Disciplinary Resignation. In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney’s petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission.
(m) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to suspended members of the bar when the disciplinary judgment conditions their rein *125 statement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and filed with the Supreme Court of Florida in quadruplicate, with a copy served on staff counsel and The Florida Bar in Tallahassee.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner’s tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the offense or misconduct upon which the suspension was based, together with the date of such suspension;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner’s occupation in detail since suspension, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every *126 civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(o) Costs.
(1)Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I)an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent an abuse of discretion the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar’s costs against the petitioner unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner’s Costs. When the bar unsuccessfully opposes a petition for reinstatement or readmission, the referee may assess the petitioner’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.
RULE 3-7.11 GENERAL RULES OF PROCEDURE
(a) Time is Directory. Except as provided herein, the time intervals required are directory only and are not jurisdictional. Failure to observe such directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party except where so provided.
(b) Process. Every member of The Florida Bar is charged with notifying The Florida Bar of a change of mailing address or military status. Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this court shall direct otherwise. Every attorney of another state who is permitted to practice for the purpose of a specific case before a court of record of this state may be served by registered or certified mail addressed to said attorney in care of the Florida attorney who was associated or appeared with the attorney in the specific case for which the out-of-state attorney was permitted to practice or addressed to said attor *127 ney at any address listed by the attorney in the pleadings in such case.
(c) Notice in Lieu of Process. Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
(d) Subpoenas. Subpoenas for the attendance of witnesses and the production of documentary evidence other than before a circuit court shall be issued as follows:
(1) Referees. Subpoenas for the attendance of witnesses and production of documentary evidence before a referee shall be issued by the referee and shall be served in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.
(2) Grievance Committees. Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued by the chair or vice-chair of a grievance committee in pursuance of an investigation authorized by the committee. Such subpoenas may be served by any member of such committee, by an investigator employed by The Florida Bar, or in the manner provided by law for the service of process.
(3) Bar Counsel Investigations. Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting an initial investigation shall be issued by the chair or vice chair of a grievance committee to which the matter will be assigned, if appropriate. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(4)After Grievance Committee Action, But Before Appointment of Referee. Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting further investigation after action by a grievance committee, but before appointment of a referee, shall be issued by the chair or vice chair of the grievance committee to which the matter was assigned. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(36) Board of Governors. Subpoenas for the attendance of witnesses and the production of documentary evidence before the board of governors shall be issued by the executive director and shall be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(46) Confidential Proceedings. If the proceeding is confidential, a subpoena shall not name the respondent but shall style the proceeding as “Confidential Proceeding by The Florida Bar under the Rules of Discipline.”
(67) Contempt. Any persons who without adequate excuse fail to obey such a subpoena served upon them may be cited for contempt of this court in the manner provided by this rule.
(8) Assistance to Other Latvyer Disciplinary Jurisdictions. Upon receipt of a subpoena certified to be duly issued under the rules or laws of another lawyer disciplinary jurisdiction, the executive director may issue a subpoena directing a person domiciled or found within the state of Florida to give testimony and/or produce documents or other things for use in the other lawyer disciplinary proceedings as directed in the subpoena of the other jurisdiction. The practice and procedure applicable to subpoenas issued under this subdivisions shall be that of the other jurisdiction, except that:
(A) the testimony or production shall be only in the county wherein the person resides or is employed, or as otherwise fixed by the executive director for good cause shown; and
*128 (B) compliance with any subpoena issued pursuant to this subdivision and contempt for failure in this respect shall be sought as elsewhere provided in these rules.
(e) Oath of Witness. Every -witness in every proceeding under these rules shall be sworn to tell the truth. Violation of this oath shall be an act of contempt of this court.
(f) Contempt. If an agency other than a circuit court shall find that a person is in contempt under these rules, such person shall be cited for contempt in the following manner, except that a respondent in a disciplinary proceeding may be cited for contempt by petition for an order to show cause filed and heard in the Supreme Court of Florida or in the circuit court:
(1) Petition for Order to Show Cause. The agency shall direct bar counsel, or chair of the agency if there is no bar counsel, serving in the matter in which the contempt occurs, to present to the circuit court having jurisdiction, a petition for the issuance of an order to show cause why the person so accused should not be held in contempt of this court.
(2) Appellate Review. A judgment in such contempt proceedings may be appealed by either party in the manner provided in the rule on appellate review, except that a copy of the petition for review shall not be filed with the clerk of the circuit court, and the record shall be forwarded by the judge or the agency possessing the same.
(g) Testimony of Witnesses; Contempt. Unless the respondent claims a privilege or right properly available under applicable law, the respondent or any other person who is subpoenaed to appear and give testimony or produce books, papers, or documents and who refuses to appear or produce such books, papers, or documents or who, having been duly sworn to testify, refuses to answer any proper question may be cited for contempt of this court.
(h) Court Reporters. Court reporters who are employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent attorney objects at least 48 hours in advance of the matter to be recorded, an independent contract reporter may be retained. Reasonable costs for court reporter service may be taxed to a respondent for payment to The Florida Bar.
(i) Disqualification as Trier and Attorney for Respondent Due to Conflict.
(1) Employees and Members of the Board of Governors. No employee of The Florida Bar and no member of the board of governors of The Florida Bar shall represent a party other than The Florida Bar in any of the following specific matters:
(A) designation appeals;
(B)(A) certification appeals;
(Q(B) appeals to or from the committee on professional ethics; and
(P)(C) cases being investigated or litigated involving the unlicensed practice of law.
(2) Former Members or Employees. No former member of the board of governors or former employee of The Florida Bar shall represent any party other than The Florida Bar in such matters if personally involved to any degree in the matter while a member of the board of governors or while an employee of The Florida Bar.
(3) Attorneys Precluded From Representing Parties Other Than The Florida Bar. An attorney shall not represent any party other than The Florida Bar in proceedings provided for in these disciplinary rules under any of the following circumstances:
(A) If the attorney is a member or former member of the board of governors, member or former member of any grievance committee, or employee or former employee of The Florida Bar and while in such capacity participated personally in any way in the investigation or prosecution of the matter or any related matter in which the attorney seeks to be a representative or if the attorney served in a supervisory capacity over such investigation or prosecution.
(B) A partner, associate, employer, or employee of an attorney prohibited from representation by subdivision (3)(A) shall likewise be prohibited from representing any such party.
*129 (C) A member of the board shall not represent any party except The Florida Bar while serving as a member of the board of governors or for one year thereafter.
(D) An employee of The Florida Bar shall not represent any party except The Florida Bar while an employee of The Florida Bar and shall not thereafter represent such party for a period of 1 year without the express consent of the board.
(E) A member of a grievance committee shall not represent any party except The Florida Bar while a member of a grievance committee and shall not thereafter represent such party for a period of 1 year without the express consent of the board.
(F) A partner, associate, employer, or employee of an attorney prohibited from representation by subdivisions (3)(C), (3)(D), and (3)(E) of this rule shall not represent any party except The Florida Bar without the express consent of the board of governors.
RULE 3-7.12 DISCIPLINARY RESIGNATION FROM THE FLORIDA BAR
If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and a petition for disciplinary resignation may be filed pursuant to this rule. An attorney may seek disciplinary resignation from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a)Petition for Disciplinary Resignation. The petition for disciplinary resignation shall be styled “The Florida Bar v. (respondent’s name),” titled “Petition for Disciplinary Resignation,” filed with the Supreme Court of Florida and contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings, and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply for readmission to the bar. A copy of the petition shall be served upon the executive director of The Florida Bar.
(b) Judgment. Within 60 days after filing and service of the petition, The Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for disciplinary resignation. A copy' of the response shall be served upon the petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will neither adversely affect the integrity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting disciplinary resignation; otherwise, the petition shall be denied. If the judgment grants the disciplinary resignation, the judgment may require that the disciplinary resignation be subject to appropriate conditions.
(c) Delay of Disciplinary Proceedings. The filing of a petition for disciplinary resignation shall not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then without the approval of the referee.
(d) Dismissal of Pending Disciplinary Cases. If disciplinary resignation is accepted under this rule, such disciplinary resignation shall serve to dismiss all pending disciplinary cases.
(e) Costs of Pending Disciplinary Cases. The judgment of the court granting disciplinary resignation may impose a judgment for the costs expended by The Florida Bar in all pending disciplinary cases against the respondent. Such costs shall be of the types and amounts as authorized elsewhere in these Rules Regulating The Florida Bar.
*130 RULE 3-7.13 PLACEMENT ON INACTIVE LIST — FOR INCAPACITY NOT RELATED TO MISCONDUCT
(a) Proceedings Without Adjudication of Incompetence or Hospitalization Under the Florida Mental Health Act. Whenever an attorney who has not been adjudged incompetent is incapable of practicing law because of physical or mental illness, incapacity, or other infirmity, the attorney may be placed-upon an-inactive list classified as an inactive member and shall refrain from the practice of law for such reason even though no misconduct is alleged or proved. Proceedings with a-view of placing an-attorney on the inactive list under this rule shall be processed under the Rules of Discipline in the same manner as proceedings involving acts of misconduct.
A member who has been placed on such inactive list classified as inactive under this rule may be readmitted reinstated upon application petition to and approval by the board of governors. A rejection of such petition may be reviewed by petition to the Supreme Court of Florida.
(b) Proceedings Upon Adjudication of Incompetence or Hospitalization Under the Florida Mental Health Act. A lawyer who has been adjudicated insane or mentally incompetent or hospitalized under the Florida Mental Health Act shall be placed on an inactive -list classified as an inactive member and shah refrain from the practice of law. Upon receipt of notice that a member has been adjudicated incompetent or hospitalized under the Florida Mental Health Act, The Florida Bar shall file notice thereof with the Supreme Court of Florida. Thereafter the court shall issue an order classifying the member as an inactive member.
If an order of restoration is entered by a court having jurisdiction or the lawyer is discharged from hospitalization under the Florida Mental Health Act, the lawyer may be readmitted reinstated upon application to and approval by the board of governors. A rejection of such petition may be reviewed by petition to the Supreme Court of Florida.
RULE 4-5.6 RESTRICTIONS ON RIGHT TO PRACTICE
A lawyer shall not participate in offering or making:
(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) an agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a controversy between private parties.
Comment
An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer. Subdivision (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
Subdivision (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.
This rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice in accordance with the provisions of rule 4-1.17.
This rule is not a per se prohibition against severance agreements between lawyers and law firms. Severance agreements containing reasonable and fair compensation provisions designed to avoid disputes requiring time-consuming quantum meruit analysis are not prohibited by this rule. Severance agreements, on the other hand, that contain punitive clauses, the effect of which are to restrict competition or encroach upon a client’s inherent right to select counsel, are prohibited. The percentage limitations found in rule 4-1.5(f)(4)(D) do not apply to fees divided pursuant to a severance agreement. No severance agreement shall contain a fee-splitting arrangement that results in a fee prohibited by the Rules Regulating The Florida Bar.
*131 RULE 4-7.6 COMMUNICATION OF FIELDS OF PRACTICE
A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
(a) Patent Practice. A lawyer admitted to engage in patent practice before the United States patent and trademark office may use the designation “patent attorney” or a substantially similar designation.
(b) Certified Lawyers. A lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by an organization whose specialty certification program has been accredited by the American Bar Association may inform the public and other lawyers of the lawyer’s certified areas of legal practice and may state in communications to the public that the lawyer is a “specialist in (area of certification).”
(c4-Designated Lawyers. — A- lawyer who complies with-the Florida designation plan as set forth in chapter 4 — Rules Regulating The Florida Bar,^aay inform the public and other lawyers of the lawyer-’s designated areas of legalp-racticer
Comment
This rule permits a lawyer to indicate areas of practice in communications about the lawyer’s services, such as in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or an organization having substantially the same standards may be described to the public as a “specialist” or as “specializing.”
RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
(a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law within the state of Florida except special trust funds received or disbursed by an attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of such special trust account.
(b) Minimum Trust Accounting Records. The following are the minimum trust accounting records that shall be maintained:
(1) A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts. Such accounts shall be located in the state of Florida unless the client otherwise directs, in writing, or unless the financial institution in which the funds are maintained voluntarily submits to the jurisdiction of the Supreme Court of Florida. Such voluntary submission to the jurisdiction of the Supreme Court of Florida shall be on the form prescribed by the board of governors of The Florida Bar. The account or accounts shall be in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
(A) the date and source of all trust funds received; and
(B) the client or matter for which the funds were received.
(3) Original canceled checks, all of which must be numbered consecutively, or, if the financial institution wherein the trust account is maintained does not return the original checks, copies thereof, as provided by the financial institution.
(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
*132 (A) the identification of the client or matter for which the funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing:
(A) the identification of the client or matter for which trust funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
(c)Minimum Trust Accounting Procedures. The minimum trust accounting procedures that shall be followed by all attorneys practicing in Florida who receive or disburse trust money or property are as follows:
(1)The lawyer shall cause to be made monthly:
(A) reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
(B) a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons therefor.
(2) At least annually, the lawyer shall prepare a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least 6 years.
(4) The lawyer or law firm shall authorize and request any bank .or savings and loan association where the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399-2300, in the event any trust check is returned due to insufficient funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Audits. Any of the following shall be cause for The Florida Bar to order an audit of a trust account:
(1) failure to file the trust account certificate required by rule 5-1.2(c)(5);
(2) return of a trust account check for insufficient funds or for uncollected funds, absent bank error;
(3) filing of a petition for creditor relief on behalf of an attorney;
(4) filing of felony charges against an attorney;
(5) adjudication of insanity or incompetence or hospitalization of the attorney under The Florida Mental Health Act;
(6) filing of a claim against the attorney with the Clients’ Security Fund;
(7) when requested by a grievance committee or the board of governors; or
(8) upon court order.
(e) Cost of Audit. Audits conducted in any of the circumstances enumerated in subdivision (d) above shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all *133 records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account mil be subject to audit.
(f) Failure to Comply With Subpoena.
(1) Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of same in these disciplinary proceedings.
(2) Notice of noncompliance with a subpoena may be filed with the Supreme Court of Florida only if a grievance committee or a referee shall first find that no good cause exists for failure to comply. A grievance committee or referee shall hear the issue of noncompliance and issue findings thereon within 30 days of the request for issuance of the notice of noncompliance.
(3) After notice is filed with the Supreme Court of Florida by The Florida Bar that a member of the bar has failed to fully comply with a properly issued subpoena directing the production of any trust accounting records that are required by these rules, unless good cause for the failure to comply is shown, the member may be suspended from the practice of law in Florida, by order of the Supreme Court of Florida, until such time as the member fully complies with the subpoena and/or until further order of the court.
(4) Any member subject to suspension under this rule may petition the court, within 10 days of the filing of the notice, to withhold entry of the order of suspension or at any time after entry of an order of suspension may petition the court to terminate or modify the order of suspension. If the court determines it necessary to refer the petition to terminate or modify the suspension to a referee for receipt of evidence, the referee proceedings shall be conducted in the same manner as proceedings before a referee on a petition to withhold, terminate, or modify an order of emergency suspension, as elsewhere provided in these rules.
RULE 6-10.3 MINIMUM CONTINUING LEGAL EDUCATION STANDARDS
(a) Applicability. Every member except those exempt under rule 6 — 10.3(c)(4) and (5) shall comply and report compliance with the continuing legal education requirement.
(b) Minimum Hourly Continuing Legal Education Requirements. Each member shall complete a minimum of 30 credit hours of approved continuing legal education activity every 3 years. Five Two of the hours must be in the area of legal ethics or professionalism, including approved substance abuse programs. Courses offering credit in professionalism must be approved by the center for professionalism. These 5 hours are to be included in, and not in addition to, the regular 30-hour requirement. If a member completes more than 5 hours during any reporting cycle, the excess professionalism credits cannot be carried over to the next reporting cycle.
(c) Exemptions.
(1) Active military service.
(2) Undue hardship.
(3) Nonresident members not delivering legal services or advice on matters or issues governed by Florida law.
(4) Members of the full-time federal judiciary who are prohibited from engaging in the private practice of law.
(5) Justices of the Supreme Court of Florida and judges of the district courts of appeal, circuit courts, and county courts, and such other judicial officers and employees as may be designated by the Supreme Court of Florida.
(6) Inactive members of The Florida Bar.
(d) Course Approval. Course approval shall be set forth in policies adopted pursuant to this rule. Special policies shall be adopted for courses sponsored by governmental agencies for employee attorneys that shall exempt such courses from any course approval fee and may exempt such courses from other *134 requirements as determined by the board of legal specialization and education.
(e) Accreditation of Hours. Accreditation shall be as set forth in the policies adopted pursuant to this rule. If a course is presented or sponsored by or has received credit approval from an organized state bar (whether integrated or voluntary), such course shall be deemed an approved course for purposes of this rule.
(f) Full-time Government Employees. Credit hours shall be given full-time government employees for courses presented by governmental agencies. Application for credit approval may be submitted by the full-time government attorney before or after attendance, without charge.
(g) Skills Training Preadmission. The board of legal specialization and education may approve for CLER credit a basic skills or entry level training program developed and presented by a governmental entity. If approved, credit earned through attendance at such course, within 8 months prior to admission to The Florida Bar, shall be applicable under rule 6 — 10.3(b).
6-20. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ELDER LAW LAWYER
RULE 6-20.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may apply to The Florida Bar board of legal specialization and education for a certificate identifying the lawyer as a “Board Certified Elder Law Attorney.” The purpose of the standards is to identify those lawyers who practice in the area of elder law and who have the experience, knowledge, skills, and judgment to be properly identified to the public as certified elder law attorneys.
RULE 6-20.2 DEFINITIONS
(a) Elder Law. “Elder law” means legal issues involving health and personal care planning, including: advance directives; lifetime planning; family issues; fiduciary representation; capacity; guardianship; power of attorney; financial planning; public benefits and insurance; resident rights in long-term care facilities; housing opportunities and financing; employment and retirement matters; income, estate, and gift tax matters; estate planning; probate; nursing home claims; age or disability discrimination and grandparents’ rights. The specialization encompasses all aspects of planning for aging, illness, and incapacity. Elder law clients are predominantly seniors, and the specialization requires a practitioner to be particularly sensitive to the legal issues impacting these clients.
RULE 6-20,3 MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of 5 years as of the date of filing an application. The years of law practice need not be consecutive.
(b) Substantial Involvement. The applicant must demonstrate substantial involvement in elder law as defined by the following:
(1) At least 5 years of law practice, of which at least 40 percent has been spent in active participation in elder law. At least 3 years of this practice shall be immediately preceding application.
(2) Substantial involvement means the applicant has devoted 40 percent or more of the applicant’s practice to matters in which issues of elder law are significant factors and in which the applicant had substantial and direct participation in those elder law issues in each of the 3 years preceding the application. An applicant must furnish information concerning the frequency of the applicant’s work and the nature of the issues involved. For the purposes of this subdivision the “practice of law” shall be defined in rule 6-3.5(c)(1), except that it shall also include time devoted to lecturing and/or authoring books or articles on elder law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with *135 this requirement shall be made initially through a form of questionnaire approved by the elder law certification committee but written or oral supplementation may be required.
(c) Practical Experience. During the 3 years immediately preceding the application, the applicant shall have provided legal services in at least 60 matters as follows:
(1) Forty must be in categories listed in (A)through (E) below, with at least 5 matters in each category.
(2) Ten of the matters must be in categories listed in (F) through (M) below. No more than 5 in any 1 category may be credited toward the total requirement of 60 matters.
(3) The remaining 10 matters may be in any category listed in (A) through (M) below, and are not subject to the limitation contained in parts (1) or (2) of this subdivision.
(4) As used in this subdivision, an applicant will be considered to have “provided legal services” if the applicant: provided advice (written or oral, but if oral, supported by substantial documentation in the client’s file) tailored to and based on facts and circumstances specific to a particular client; drafted legal documents such as, but not limited to, wills, trusts, or health care directives, provided that those legal documents were tailored to and based on facts and circumstances specific to the particular client; prepared legal documents and took other steps necessary for the administration of a previously prepared legal directive such as, but not limited to, a will or trust; or provided representation to a party in contested litigation or administrative matters concerning an elder law issue.
(5) The categories are:
(A) Health and personal care planning, including giving advice regarding and preparing, advance medical directives (medical powers of attorney, living wills, and health care declarations) and counseling older persons, attorneys-in-fact, and families about medical and life-sustaining choices, and related personal life choices.
(B) Pre-mortem legal planning, including giving advice and preparing documents regarding wills, trusts, durable general or financial powers of attorney, real estate, gifting, and the financial and tax implications of any proposed action.
(C) Fiduciary representation, including seeking the appointment of, giving advice to, representing, or serving as executor, personal representative, attorney-in-fact, trustee, guardian, conservator, representative payee, or other formal or informal fiduciary.
(D) Legal capacity counseling, including advising how capacity is determined and the level of capacity required for various legal activities, and representing those who are or may be the subject of guardianship/conservatorship proceedings or other protective arrangements.
(E) Public benefits advice, including planning for and assisting in obtaining Medicare, Medicaid, Social Security, Supplemental Security Income, Veterans’ benefits, and food stamps.
(F) Advice on insurance matters, including analyzing and explaining the types of insurance available, such as health, life, long-term care, home care, COBRA, medi-gap, long-term disability, dread disease, and burial/funeral policies.
(G) Resident rights advocacy, including advising patients and residents of hospitals, nursing facilities, continuing care facilities, and those cared for in their homes of their rights and appropriate remedies in matters such as admission, transfer and discharge policies, quality of care, and related issues.
(H) Housing counseling, including reviewing the options available and the financing of those options such as mortgage alternatives, renovation loan programs, life care contracts, and home equity conversion.
(I) Employment and retirement advice, including pensions, retiree health benefits, unemployment benefits, and other benefits.
(J) Income, estate, and gift tax advice, including consequences of plans made and advice offered.
*136 (K) Counseling about tort claims against nursing homes.
(L) Counseling with regard to age and/or disability discrimination in employment and housing.
(M) Litigation and administrative advocacy in connection with any of the above matters, including -will contests, contested capacity issues, elder abuse (including financial or consumer fraud), fiduciary administration, public benefits, nursing home torts, and discrimination.
(d) Peer Review. The applicant shall submit the names and addresses of 5 other attorneys who are familiar with the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of elder law. The board of legal specialization and education and elder law certification committee may authorize references from persons other than attorneys and may also make such additional inquiries as they deem appropriate to complete peer review, as provided elsewhere in these rules.
(e) Education. The applicant must demonstrate that during the 3-year period immediately preceding the date of application, the applicant has met the continuing legal education requirements in elder law as follows. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 60 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to elder law. The education requirement may be satisfied by 1 or more of the following:
(1) attendance at continuing legal education seminars meeting the requirements set forth above;
(2) lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) authoring articles or books published in professional periodicals or other professional publications;
(4) teaching courses in elder law at an approved law school or other graduate level program presented by a recognized professional education association;
(5) completing such home study programs as may be approved by the board of legal specialization and education or the elder law certification committee, subject to the limitation that no more than 50 percent of the required number of hours of education may be satisfied through home study programs; or

(6) such other methods as may be ay-proved by the board of legal specialization and education and the elder law certification committee.

The elder law certification committee shall establish policies applicable to this subdivision, including, but not limited to, the method of establishment of the number of hours allocable to any of the preceding requirements. Such policies shall provide that hours shall be allocable to each separate but substantially different lecture, article, or other activity described in subdivisions (2), (3), and (j) above.
(f) Examination. The applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency, and experience in elder law to justify the representation of special competence to the legal profession and the public.
(g) Exemption. Any applicant who as of the effective date of these standards is: currently certified by the National Elder Law Foundation and meets all other requirements set forth under subdivisions (a) through (e), shall be exempt from the examination. This exemption shall only be applicable with respect to any applicant meeting the aforesaid requirements and whose application is submitted within 2 years from the effective date of these standards.
RULE 6-20.4 RECERTIFICATION
To be eligible for recertification, an applicant must meet the following requirements:
(a) Substantial Involvement. Applicants must demonstrate a satisfactory showing, as determined by the board of legal specialization and education and the elder law certifi *137 cation committee, of continuous and substantial involvement in the field of elder law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-20.3(b) and (c).
(b) Continuing Legal Education. Applicants must demonstrate the completion of at least 125 hours of continuing legal education since the filing of the last application for certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified elder law attorneys. If the applicant has not attained 125 hours of continuing legal education, but has attained more than 75 hours during such period, successful passage of the written examination given by the board of legal specialization and education to new applicants shall satisfy the continuing legal education requirements.
(c) Peer Review. Peer review shall be conducted in accordance with the standards set forth in rule 6-20.3(d).
10-3. STANDING COMMITTEE
RULE 10-3.1 GENERALLY
The standing committee shall be appointed by the court on advice of the board of governors of The Florida Bar and shall consist of 37 members, 18 of whom shall be nonlaw-yers. The board of governors is delegated the authority to appoint a chair and at least 1 vice-chair of the standing committee, both of whom may be nonlawyers. One-third of the members of the standing committee shall constitute a quorum. The members of the standing-committee shall serve staggered terms. — To accomplish-this, the initial terms shall be staggered as follows: -2-members of The Florida Bar and 2-nonlawyer members to-serve-1 year; 2 members of The F-lorida Bar- and-2 nonlawyer members-to serve % years; — all-remaining members to serve 8 years. — After that, aAll appointments to the standing committee shall be for a term of 3 years. No member shall be appointed to more than 2 full consecutive terms. The members of the standing committee shall not be subject to removal by the court during their terms of office except for cause. Cause shall include unexcused failures to attend scheduled meetings, the number of which shall be set forth by the standing committee in an attendance policy.
RULE 10-3.3 APPOINTMENT OF STAFF COUNSEL AND BAR COUNSEL
The board of governors shall employ 1 or more UPL staff counsel and other necessary employees, including investigators, to assist the standing committee to carry out its responsibilities as prescribed elsewhere in these rules. Upon approving a recommendation for litigation under these-rules, tThe board of governors shall may appoint bar counsel to prosecute the cause before the referee.
10-4. CIRCUIT COMMITTEES
RULE 10-4.1 GENERALLY
(a) Appointment. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum. All appointees shall be residents of the circuit or have their principal office in the circuit. The terms of the members of circuit committees shall begin on July 1 and shalh-end- on-the next succeeding-June 30 or- at be for 1 year from the date of appointment by the court or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member’s third term provided, however, the expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Committee Chair. For each circuit committee there shall be a chair designated *138 by the board of governors, and a A vice-chair and secretary may be designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt written report of its investigation and findings to UPL staff counsel and the standing committee. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) closing cases not deemed by the circuit committee to warrant further action by The Florida Bar;
(2) closing cases proposed to be resolved by cease and desist affidavit; and
(3) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(d) Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not less frequently than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be set in advance by agreement between each committee and UPL staff counsel.
10-5. COMPLAINT PROCESSING AND INITIAL INVESTIGATORY PROCEDURES
RULE 10-5.1 COMPLAINT PROCESSING
(a)Complaints. All complaints alleging unlicensed practice of law, except those initiated by The Florida Bar, shall be in writing and signed by the complainant. The complaint shall contain a statement providing that:
Under penalties of perjury, I declare that I have read the foregoing document and that to the best of my knowledge and belief the facts stated in it are true.
(b) Review by UPL Staff Counsel. UPL staff counsel shall review the complaint and determine whether the alleged conduct, if proven, would constitute a violation of the prohibition against engaging in the unlicensed practice of law. UPL staff counsel may conduct a preliminary, informal investigation to aid in this determination and, if necessary, may employ a Florida bar staff investigator to aid in the preliminary investigation. If UPL staff counsel determines that the facts, if proven, would not constitute a violation, UPL staff counsel may decline to pursue the complaint. A decision by UPL staff counsel not to pursue a complaint shall not preclude further action or review under the Rules Regulating The Florida Bar. The complainant shall be notified of a decision not to pursue a complaint and shall be given the reasons therefor.
(c) Referral to Circuit Committee. If URL staff counsel decides-to pursue a complaint, a UPL file will be opened and the-matter referred-to the appropriate- circuit committee for investigation UPL staff counsel may refer a UPL file to the appropriate circuit committee for further investigation or action as authorized elsewhere in these rules.
(d) Closing by UPL Staff Counsel and Committee Chair. If UPL staff counsel and a circuit committee chair concur in a finding that the case should be closed without a finding of unlicensed practice of law, the complaint may be closed on such finding without reference to the circuit committee or standing committee.
(e) Referral to UPL Staff Counsel for Opening. A complaint received by a circuit committee or standing committee member directly from a complainant shall be reported to UPL staff counsel for docketing and assignment of a case number. Should the circuit committee or standing committee member decide that the facts, if proven, would not constitute a violation of the unlicensed practice of law, the circuit committee or standing committee member shall forward this finding to UPL staff counsel along with the complaint for notification to the complainant as outlined above. Formal investigation by a circuit committee may proceed after the mat *139 ter has been referred to UPL staff counsel for docketing.
10-6. PROCEDURES FOR INVESTIGATION
RULE 10-6.1 HEARINGS
(a) Conduct of Proceedings. The proceedings of circuit committees and the standing committee when hearings are held may be informal in nature and the committees shall not be bound by the rules of evidence.
(b) Taking Testimony. UPL staff counsel, Tthe standing committee, each circuit committee, and members thereof conducting investigations are empowered to take and have transcribed the testimony and evidence of witnesses. If the testimony is recorded stenographieally or otherwise, the witness shall be sworn by any person authorized by law to administer oaths.
(c) Rights and Responsibilities of Respondent. The respondent may be required to appear and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel.
(d) Rights of Complaining Witness. The complaining witness is not a party to the investigative proceeding although the complainant may be called as a witness should the matter come before a judge or a referee. The complainant may be granted the right to be present at any circuit committee hearing when the respondent is present before the committee. The complaining witness shall have no right to appeal the finding of the circuit committee.
RULE 10-6.2 SUBPOENAS
(a) Issuance by Court. Upon receiving a written application of the chair of the standing committee or of a circuit committee or UPL staff counsel alleging facts indicating that a person or entity is or may be practicing law without a license and that the issuance of a subpoena is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is located or the clerk of the Supreme Court of Florida shall issue subpoenas in the name, respectively, of the chief judge of the circuit or the chief justice for the attendance of any person and production of books and records before designated counsel or the investigating circuit committee or any member thereof designated in-such application at the time and place within its circuit designated by- the investigating -circuit committee in such application. Such subpoenas shall be returnable to the circuit court of the residence or place of business of the person subpoenaed. A like subpoena shall issue upon application by any person or entity under investigation.
(b) Failure to Comply. Failure to comply with any subpoena shall constitute a contempt of court and may be punished by the Supreme Court of Florida or by the circuit court of the circuit to which the subpoena is returnable or where the contemnor may be found. The circuit court to which the subpoena is returnable shall have power to enter such orders as may be necessary for the enforcement of the subpoena.
RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president of The Florida Bar, or the chair of the standing committee, alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be *140 allowed for preparation of the defense after service of the order on the respondent.
(2)The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent’s omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(1) if the respondent has been released on bail in the amount of $5,000 or more;
(2) if the respondent has no dependents and has gross income that exceeds $100 per week (the income limit shall be increased by $20 per week for each of the first two dependents of the respondent and by $10 per week for each dependent beyond the first two); or
(3) if the respondent owns cash in excess of $500.
In determining indigency, the court shall also consider: the probable expense and burden of defending the case; the ownership of, or equity in, any tangible or intangible personal property or real property, or the expectancy of an interest in any such property by the respondent; and the amount of debts owed by the respondent or debts that might be incurred by the respondent because of family illness or other family misfortunes.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent’s own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
(5) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guiltyv, and the cost of prosecution, including investigative costs, shall be included and entered in the judgment rendered against the respondent.
(6) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be' pronounced in open court and in the presence of the respondent.
(d)Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of “guilty,” together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief, to the referee’s judg *141 ment and recommended sentence within 30 days of the date of filing with the court of the referee’s judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief within 10 days after service of respondent’s brief. The respondent may file a reply brief within 5 days after service of The Florida Bar’s responsive brief.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $500.00, imprisonment of up to 5 months, or both.
(f) Costs. The court may also award costs.
10-8. CONFIDENTIALITY
RULE 10-8.1 FILES
(a) Files Are Property of Bar. All matters, including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those unlicensed practice of law matters conducted in county or circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the UPL record as defined in these rules.
(b) UPL Record. The UPL record shall consist of the record before a circuit committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, and recordings and transcripts of hearings furnished to, served on, or received from the respondent or the complainant. The record before the circuit committee shall consist of all reports, correspondence, papers, and recordings furnished to or received from the respondent and the transcript of circuit committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The record before a referee and the record before the Supreme Court of Florida shall include all items properly filed in the cause including, pleadings, transcripts of testimony, exhibits in evidence, and the report of the referee.
(c) Limitations on Disclosure. Any material provided to or promulgated by The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the UPL record, that portion of the UPL record may be sealed by the circuit committee chair, the referee, or the court.
(d) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on dr provided to those persons.
(e) Response to Inquiry. Representatives of The Florida Bar, authorized by the board of governors, shall reply to inquiries regarding a pending or closed unlicensed practice of law investigation as follows:
(1) Cases Opened Prior To November 1, 1992. Cases opened prior to November 1, 1992, shall remain confidential.
(2) Cases Opened On or After November 1, 1992. In any case opened on or after November 1, 1992, the fact that an unlicensed practice of law investigation is pending and the status of the investigation shall be public information; however, the UPL record shall remain confidential except as provided in rule 10 — 8.1(e)(4).
(3) Recommendations of Circuit Committee. The recommendation of the circuit committee as to the disposition of an investigation opened on or after November 1, 1992, shall be public information; however, the UPL record shall remain confidential except as provided in rule 10 — 8.1(e)(4).
(4) Final Action by Circuit Committee, Standing Committee, and UPL Staff Counsel. The final action of the -standing commit *142 tee on investigations opened on or after November 1, 1992, shall be public information. Once the recommendation is accepted^-tT he UPL record in cases opened on or after November 1, 1992, that are closed by the circuit committee, the standing committee, or UPL staff counsel as provided elsewhere in these rules, cases where a cease and desist affidavit has been accepted, and cases where a litigation recommendation has been approved shall be public information and may be provided upon specific inquiry except that information that remains confidential under rule 10-8.1(c). The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(f) Production of UPL Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the UPL record even if otherwise deemed confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(g) Notice to Judges. Any judge of a court of record may be advised as to the status of a confidential unlicensed practice of law ease and may be provided with a copy of the UPL record. The judge shall maintain the confidentiality of the matter.
(h) Response to False or Misleading Statements. If public statements that are false and misleading are made about any UPL case, The Florida Bar may make any disclosure necessary to correct such false or misleading statements.
(i) Providing Otherwise Confidential Material. Nothing contained herein shall prohibit The Florida Bar from providing otherwise confidential material as provided in rule,10-3.2(f).
RULE 18-1.4 SUPERVISION AND LIMITATIONS
(a)Supervision by Attorney. An authorized legal assistance attorney must perform all activities authorized by this chapter under the supervision of a supervising attorney.
(b) Representation of Bar Membership Status. Authorized legal assistance attorneys permitted to perform services under this chapter are not, and shall not represent themselves to be, members in good standing of The Florida Bar licensed to practice law in this state.
(c) Range of Legal Issues for Which Representation is Permitted. An authorized legal assistance attorney may appear in court on behalf of active duty military personnel authorized legal assistance clients provided the appearance is made concerning a civil matter limited to 1 of the following actions:
(1) all landlord/tenant disputes under applicable statutory law;
(2) all actions in small claims court;
(3) domestic relations matters limited solely to name changes, adoptions, paternity, child custody modification, or ehild/spousal support enforcement;
(4) routine or statutory probate matters limited solely to summary administration under applicable statutory law;
(5) all actions under the Florida Consumer Collection Practices Act; and
(6) all actions under the Florida Motor Vehicle Repair Act.
RULE 18-1.5 CERTIFICATION
Permission for an authorized legal assistance attorney to perform services under this chapter shall become effective upon filing with and approval by the clerk of the Supreme Court of Florida of:
(a) a letter from the commanding officer of the approved legal assistance office stating that the authorized legal assistance attorney is currently assigned with that legal assistance office and that an attorney employed by or participating as a volunteer with that legal assistance office will assume the duties of the supervising attorney required hereunder;
(b) a certificate from the highest court or agency in the state, territory, or district in which the authorized legal assistance attorney is licensed to practice law certifying that the authorized legal assistance attorney is a *143 member in good standing and has a clear disciplinary record as required’by rule 18-1.3(a)(2), and advising of any pending complaints and/or investigations involving the authorized legal assistance attorney; and
(c) a sworn statement by the authorized legal assistance attorney that the attorney:
(1) has read and is familiar with chapter 4 of the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
(2) has completed The Florida Bar Young Lawyers Division Bridge-the-Gap Seminar (Basic Skills Course Requirement); and
(3) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by chapter 3 and rule 18-1.7 of the Rules Regulating The Florida Bar, and authorizes the practitioner’s home state to be advised of any disciplinary action taken in Florida.
RULE 18-1.6 WITHDRAWAL OR TERMINATION OF CERTIFICATION
(a) Cessation of Permission to Perform Services. Permission to perform services under this chapter shall cease immediately upon the earlier of the following events:
(1) the commanding officer of the approved legal assistance office filing a notice with the clerk of the Supreme Court of Florida stating that the authorized legal assistance attorney has ceased to be associated with the legal assistance office, which notice must be filed within 30 days after such association has ceased; or
(2) the filing witlj the clerk of the Supreme Court of Florida of a notice by the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the Supreme Court of Florida to the authorized legal assistance attorney involved and to the approved legal assistance office to which the attorney had been certified. The de certified legal assistance attorney shall have 15 days upon receipt of notice to request reinstatement for good cause.
(b) Notice of Withdrawal of Certification. If an authorized legal assistance attorney’s certification is withdrawn for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the authorized legal assistance attorney was involved.
RULE 18-1.7 DISCIPLINE
(a) Contempt; Withdrawal of Certification. In addition to any appropriate proceedings and discipline that may be imposed by the Supreme Court of Florida under chapter 3 of the Rules Regulating The Florida Bar, the authorized legal assistance attorney shall be subject to the following disciplinary measures:
(1) the presiding judge or hearing officer for any matter in which the authorized legal assistance attorney has participated may hold the authorized legal assistance attorney in civil contempt for any failure to abide by such tribunal’s order, in the same manner as any other person could be held in civil contempt; and
(2) the Supreme Court of Florida or the approved authorized legal assistance attorney may, at any time, with or without cause, withdraw certification hereunder.
(b) Notice to Home State of Disciplinary Action. The Florida Bar shall notify the appropriate authority in the authorized legal assistance attorney’s home state of any disciplinary action taken against the authorized legal assistance attorney.

. In its March 21, 1997 "Motion to Sever and Motion for Expedited Review,” the Bar requested severance from oral argument and expedited review of those amendments to the Rules on which no commentary had been received. This Court granted the Bar’s motion on March 26, 1997.

. Proposed new subdivision (k) would consolidate the amounts and types of costs that may be assessed in disciplinary proceedings.

. In its January 14, 1997 "Notice of Correction to Petition,” the Bar requested that this Court not consider the proposed amendments to Rule 4-5.1 included in its original petition, filed January 6, 1997. The Board determined at its January 10, 1997 meeting that the proposed amendments to Rule 4-5.1 had not yet received final approval by the Board.

. In its March 21, 1997 "Motion to Sever and Motion for Expedited Review," the Bar requested that if the proposed change to each member's minimum continuing legal education requirement (CLER) was adopted, that compliance therewith not be required until one year after the amendments' effective date. The Bar reasoned that such a postponement "would allow at least 12 additional months for members to comply with this revised requirement before they would be obligated to account for it in their triennial CLER report.” We agree with the Bar's rationale and therefore grant its request.

. New rules 6-20.1 through 6-20.4 constitute a new subchapter of chapter six.

. Per our approval of the amendment to rule 1-4.1, the related amendments to bylaws 2-3.3 and 2-3.5 are also approved. Bylaw 2-3.3 increases the voting members of the Board of Governors to 51, while bylaw 2-3.5 schedules the election of one additional non-resident seat on the Board of Governors.

. Rule 1-12.l(g)provides that:
Notice of the proposed action of the board on a proposed amendment shall be given in an edition of The Florida Bar News that is published prior to the meeting of the board at which the board action is taken. The notice shall identify the rule(s) to be amended and shall slate in general terms the nature of the proposed amendments.
*117 We recommend to all involved that care always be taken as to the timing, manner and substance of the notice, especially when a strongly debated issue is involved.

. At oral argument, the Bar was asked if this issue was included in the advance agenda provided to Board members and other interested parties. The Bar has since provided us with its April 30, 1996, draft of that agenda which confirms that consideration of a fourth non-resident seat was carried over to the May 1996 Board meeting as "Old Business.” The Bar also notes that FCNBA's president received a copy of the draft agenda on or about April 30, 1996.

. We note that even FCNBA does not really challenge the merits of adding a fourth non-resident seat, instead objecting that in the "absence of the Special Committee's report, there is no evidence of a compelling need for a fourth non-resident seat on the Board of Governors.” FCNBA's Response at 7. FCNBA is referring to the Board's Special Study Committee on Board Composition appointed by Bar President John DeVault at the Board’s March 15-16, 1996 meeting. We take judicial notice that the Study Committee’s report has now been filed and acted upon by the Board and that our action today is consistent with the Board's action on the report. See Apportionment Plan Would Add 21st Circuit to Board, The Fla. Bar News, June 15, 1997 at 1.

. However, as noted above, compliance with the increased ethics continuing legal education requirements in amended rule 6-10.3 is riot mandatory until one year after the release date of this opinion.